CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

3/30/2018

JULIA C. DUDLEY, CLERK
BY: s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| GLOBE LIFE & ACCIDENT INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | Civil Action No. 5:16-cv-28 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SHERRY STURROCK, et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

In November 1994, Peggy Phillips ("Phillips") obtained a life insurance policy from Globe Life & Accident Insurance Company ("Globe"). She maintained this policy with Globe until her death in January 2016. The dispute in this case centers around two change-of-beneficiary letters signed by Phillips on November 5, 2015, one naming her children (Defendants Ken Biggs, Malinda Biggs, Frank Biggs, and Iva Biggs-Gordon, collectively the "Biggs Defendants") as equal beneficiaries of the policy, and the other naming her former daughter-in-law (Defendant Sherry Sturrock ("Sturrock")) as the sole beneficiary of the policy. Despite being mailed—and ostensibly received—together, Globe processed these letters on successive days, effectively creating the dispute between Sturrock and the Biggs Defendants. Rather than resolve the conflict, Globe filed this interpleader action, ECF No. 1, and asked the Court to determine who should receive the proceeds of Phillips's only life insurance policy with Globe. After receiving no objection, the Court granted Globe's request to deposit $20,471.78 of insurance proceeds with the Court.

Both Sturrock and the Biggs Defendants assert their entitlement to the entire proceeds of the policy. In a written opinion, the Court previously denied Sturrock's motion for summary judgment. *See Globe Life & Accident Ins. Co. v. Sturrock*, No. 5:16cv28 (W.D. Va. May 22, 2017), ECF No. 32 ("Summ. J. Mem. Op."). The Court held a bench trial on the merits on

August 3, 2017. This Memorandum Opinion constitutes the Court's findings of fact and

conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the

following reasons, the Court finds that Sturrock is entitled to $2,500 of the policy proceeds and

the four Biggs Defendants are entitled to divide equally the remaining proceeds of approximately

$17,971.78, with interest.

## I. Background

*A.      Policy Documents and Related Writings*

Globe issued a twenty-year life insurance policy worth $10,000, with the identification

number 00-B641002, to Phillips on November 7, 1994, and Phillips named Frank Biggs

("Frank") as the designated beneficiary. Globe Ex. 2, at 1–10, ECF No. 1-2; *see also* Ex. B14,

ECF No. 59-3.[1] The policy gave Phillips the option to change the beneficiary of her policy by

filing "a satisfactory written request with" Globe. Globe Ex. 2, at 4. On February 7, 1997, in

response to Phillips's request to increase her coverage from $15,000 to $20,000, Globe issued a

term life insurance rider in the amount of $5,000.[2] *Id.* at 11–17.

The first recorded change of beneficiary occurred on August 25, 2008, when Phillips

named Ken Biggs ("Ken") as the primary beneficiary of her policy and Malinda Biggs

("Malinda") as the contingent beneficiary. Ex. B14-B. Next, on September 4, 2013, Globe issued

a confirmation notice to Phillips that it had changed the beneficiary on her policy to Lisa Cashin

("Lisa"), Ex. B14-C, who was Frank's girlfriend at the time and is now his wife.

---

[1] The exhibits submitted at trial do not include complete copies of the relevant policy documents,
particularly the original policy. Globe submitted this evidence when it filed its interpleader complaint,
however. To fully explain the scope of the dispute between the defendants, when necessary, I will cite to
the exhibits submitted by Globe. The remaining parties do not dispute the authenticity of these
documents. Additionally, when citing exhibits presented at trial, all exhibits beginning with a "B" were
presented by the Biggs Defendants and all exhibits beginning with an "S" were presented by Sturrock.

[2] No party has explained when Phillips increased the policy from $10,000 to $15,000.

On November 8, 2014, Phillips renewed her policy, which Globe assigned a different identification number (00-6R94321). Globe Ex. 5, ECF No. 1-5. Despite the new identification number, the policy was in all respects the same as the original policy in that it was a twenty-year policy worth $20,000. *See id.*; *see also* Ex. S1, ECF No. 59-1; Ex. B14-E. Phillips named Sturrock as the primary beneficiary when she made this renewal. Ex. S4; Ex. B11; *see also* Globe Ex. 5, at 12. On February 17, 2015, Globe issued a confirmation notice to Phillips that it had changed the beneficiary on her policy, now with the identification number 00-6R94321, to Iva Biggs-Gordon ("Iva"). Ex. B14-F.

On November 5, 2015, Phillips signed two change-of-beneficiary letters, one requesting that Globe change the beneficiaries on policy number 00-B641002 to the Biggs Defendants equally, Ex. S2; Ex. B2, at 1, and the other requesting that Globe change the beneficiary on policy number 00-6R94321 to Sherry Sturrock, Ex. S3; Ex. B2, at 2. Despite these letters being mailed together, Globe issued change-of-beneficiary notices on successive days—November 17 and November 18, 2015; the first notice reflected that the beneficiaries on policy number 00-6R94321 had been changed to the Biggs Defendants, Ex. B14-G, and the second notice reflected that the beneficiary on policy number 00-6R94321 had been changed to Sturrock, Ex. S4; Ex. B14-H. Phillips did not make any further changes to her policy before she died on January 8, 2016. Summ. J. Mem. Op. 3.

B.      *Summary of Bench Trial & Competing Evidence*

1.      *Sturrock's Evidence & Witness Testimony*

Sturrock called five witnesses as part of her case in chief. First, Robert Workman ("Robert"), Sturrock's brother, testified that Phillips had lived with Iva and Brian Gordon ("Brian") and that he retrieved Phillips's belongings on November 8, 2015, after Iva and Brian

had placed them outside of their house. *See* Transcript ("Tr.") 6–7. Robert noted that he did not retrieve everything, however, and that he left behind the furniture that Phillips did not want. *Id.* at 8. Photographs of Phillips's belongings before they were retrieved show furniture, boxes, and an oxygen tank outside of Iva and Brian's house. *See* Exs. S7, S8.

Barbara Workman ("Barbara"), Sturrock's mother, testified that she had known Phillips for approximately thirty-five years and that Phillips and Sturrock were very close. Tr. 9–10. Barbara explained that during a conversation she had with Phillips around Thanksgiving 2015, Phillips stated that she was leaving the proceeds of her life insurance policy to Sturrock because Sturrock had been there for her whereas her family had not and she felt her family did not deserve the money. *Id.* at 10–11. Per Barbara, Phillips conveyed that she knew her first policy had expired, and she expressed her intention to leave the entirety of the second and only remaining policy to Sturrock. *Id.* at 11. Barbara had seen Phillips express frustration and anger with Iva and she complained of being left alone at times when she lived with Frank and Lisa, but Barbara had not heard Phillips say anything negative about Ken or Malinda. *Id.* at 11, 13.

Sandra Stone ("Stone") testified that she had known Phillips for about twenty years, Ken for about ten years, and Frank for about thirty years. *Id.* at 14. Stone asserted that she visited with Phillips after Iva had moved Phillips's belongings out of her house and onto the street. Stone expressed outrage at what Iva had done to Phillips, and Phillips responded that it was all right because "she'd get the last laugh." *Id.* at 14–15. Stone claimed that she "knew exactly what [Phillips] was referring to," *id.*, specifically, that Phillips meant that she planned to leave the insurance policy to Sturrock because Phillips had said that the money would go to the person who was willing to take care of her, *id.* at 20. On cross examination, Stone admitted that she did not speak to Phillips often and had never visited Phillips when she lived with Frank or when she

lived with Iva and Brian. *Id.* at 16. Stone further explained that Phillips expressed displeasure with Iva, but not with any of her other children. *Id.* at 16–17.

Kari Forrest ("Forrest") then testified that she spoke with Phillips nearly every day while Phillips lived with Sturrock. *Id.* at 21. According to Forrest, on an unspecified day late in the fall of 2015 after Phillips had left the hospital, *id.* at 26–27, she was visibly upset because of difficulties with her previous living situation with Iva, and she noted how she felt much better living with Sturrock, *id.* at 21–22. Forrest said that Phillips told her it was for this reason that Sturrock would get the money from the policy, although Sturrock was to give Malinda $2,500 of the proceeds. *Id.* at 22. Forrest stated that Phillips explained that there were two $20,000 policies, but that she had stopped paying on the policy assigned to her children, so that policy was no longer valid. *Id.* Forrest testified that Phillips told her that the Biggs Defendants "shouldn't get [anything] from me." *Id.* at 23. Forrest went on to explain that Phillips brought up her insurance policy frequently because it was "all [Phillips] had" in addition to her belongings, and Forrest noted that she heard Phillips discuss the policy on at least three or four occasions. *Id.* In sum, Forrest asserted that Phillips wanted to leave the policy to Sturrock because she felt betrayed by her children and that Sturrock was the only one who stepped up during the last few months of Phillips's life. *Id.* at 24. Forrest said she mostly heard Phillips express discontent with Iva and, on one or two occasions, Frank and his wife Lisa, but she never heard Phillips say anything negative about Ken or Malinda. *Id.*

Last, Sturrock herself testified. She said that she had known Phillips for many years and had remained friends with Phillips even after divorcing Frank in January 2004. *Id.* at 28–29. Phillips had lived with her son Frank at various times, and he was her favorite child. *Id.* at 40–41. Sturrock noted that she helped Phillips with her bank account when her family had not. *Id.* at 29–

30. Sturrock stayed in touch with Phillips even when Phillips had moved out of state, and she frequently heard about Phillips changing the beneficiary on the policy. *Id.* at 30. When Phillips changed the beneficiary to Frank's wife, Lisa, Sturrock acknowledged that Phillips intended for the proceeds to be divided equally between the Biggs Defendants. *Id.* at 30–31. Sturrock testified that when Phillips renewed her policy in November 2014, she listed Sturrock as the beneficiary because Sturrock had always been there for her, but she changed the beneficiary to Iva in February 2015 with the understanding that Iva would help with Phillips's medication and medical paperwork. *Id.* at 31–32. Sturrock did not know what Phillips intended for Iva to do with the proceeds. *See id.* at 32.

As to the change-of-beneficiary letters, Sturrock claimed that she prepared the letters, but that Phillips had dictated them. *Id.* at 33. That same day Phillips also executed a "Do Not Resuscitate" letter granting Ken decision-making authority in the event her medical situation deteriorated. Ex. S5. Sturrock admitted that Phillips discussed her intentions regarding the policy with both Sturrock and Ken present, but that once Ken left, she told Sturrock that she was not going to leave the policy proceeds to her children. Tr. 33. This was in contrast to the discussion when Ken was present, during which Phillips agreed to list all her children on the policy, rather than just Ken, because Ken said he would prefer to have everyone named as beneficiaries. *Id.* at 36. Per Sturrock, Phillips intentionally put the original policy number (00-B641002) on the letter requesting that her children be named beneficiaries "knowing full well" that this policy had expired and was no longer valid; conversely, Phillips intentionally put the new policy number (00-6R94321) on the letter requesting that Sturrock be named the beneficiary to effectuate her desire for Sturrock to receive the policy proceeds. *Id.* at 33. To that end, Sturrock testified that

"[u]nfortunately, she thought she would make things difficult on them and, you know, easy on me but that's not what happened." *Id.*

Sturrock also noted that Phillips did not think Malinda should be completely left out, so she prepared a letter, dated December 3, 2015, for Phillips to sign confirming that she would give Malinda $2,500 out of the money she received from Phillips. *Id.* at 34–35; *see* Ex. S11. Sturrock explained that the letter was intended to be vague in that it did not mention the money was to come from an insurance policy because Phillips did not want her children to know of her true intentions should the letter ever fall into the wrong hands.[3] Tr. 35. Phillips later asked Sturrock to throw away the letter, but Sturrock refused because she wanted to abide by Phillips's earlier wishes. *Id.*

2.   *The Biggs Defendants' Evidence & Witness Testimony*

The Biggs Defendants called seven witnesses as part of their case in chief. First, Brian, Iva's husband, testified that Phillips lived with him and Iva, during which time he heard Phillips mention two different insurance policies on a few occasions. Tr. 43. Brian explained that it was his understanding, based on what he heard from Phillips, that both policies—a $20,000 policy and a $5,000 policy—were to be divided equally among her four children. *Id.* at 43–44. Brian also noted how Phillips would neglect to use her oxygen and would get in arguments with Iva when pressed about her smoking habits. *Id.* at 45.

Lisa, Frank's current wife, testified that she had known Phillips for approximately ten years and that Phillips lived with her and Frank most recently from June 2013 to August 2014.

_____

[3] The letter reads in its entirety: "To Whom It may Concern: In the event that something happens to Peggy J. Phillips. I, Sherry A. Sturrock promise to give Malinda Biggs, $2500.00 that was saved by Peggy for Malinda to do with as she wishes. Understanding that it may take some time to access this money." Ex. S11. Both Sturrock and Phillips signed this letter, which was also signed by a notary public.

*Id.* at 47–48. Lisa confirmed that Phillips listed her as the beneficiary on her life insurance policy for tax purposes, but that the money was still supposed to go to Phillips's children. *Id.* at 48–49.

Jessica Funk ("Jessica"), Frank and Sturrock's daughter, testified that she was close with her grandmother. *Id.* at 52. Jessica indicated that Phillips was generally happy, but she would "express[] certain feelings" whenever she was getting ready to move to the next house. *Id.* Malinda asked Jessica about a visit she had with Phillips at the hospital on January 4, 2016, shortly before Phillips died. *Id.* at 53–54. Jessica testified that her sister Kayla and Sturrock were also visiting Phillips. *Id.* Jessica said Phillips discussed her intention to split her $20,000 policy between the four children. *Id.* Jessica memorialized her recollection of this conversation in an email dated May 17, 2016. Ex. B5. Additionally, Jessica explained that Phillips wanted Sturrock to write a letter to Iva expressing Phillips's belief that Iva did not deserve the money, but that she was going to give it to Iva anyway so as to keep her word. Tr. 54. Jessica understood Phillips to be referring to money from the $20,000 policy. *Id.* at 55. Jessica also testified that her father, Frank, had expressed his intent to give his portion of the policy proceeds to her and her sister. *Id.* at 60–61.

Frank testified that he had always maintained he did not want any money from his mother's life insurance policy, and he confirmed that if he were to receive it, he would give his share to his daughters. *Id.* at 61–62. Frank stated that Phillips lived with him multiple times, beginning when he was still married to Sturrock. *Id.* at 62. Frank explained that his mother had Chronic Obstructive Pulmonary Disease and was "very difficult" to live with. *Id.* at 63. He attributed some of this difficulty to Phillips's resistance to his attempts to limit her smoking. *Id.* at 63–64. He said that Phillips had lived with her sister in Florida on and off, and when they had problems, Phillips would move to back to Frank's house and later Iva's. Frank also noted that

after Phillips moved out of his house and in with Iva and Brian, he did not talk to her for almost a year, and indeed did not speak with her again until the day she passed. *Id.* at 63, 67–68. As to the policy, Frank noted again that he was not in favor of Phillips having obtained it, but she was determined to leave something for her children because their father had not. *Id.* at 67.

Iva testified that Phillips would bring up the insurance policy every time the two talked on the phone and that these conversations continued after Phillips moved in with Iva and Brian. *Id.* at 71. Iva stated that Phillips did not react well to Iva's attempts to get her to wear her oxygen and limit her smoking. *Id.* at 72–73. Iva also explained that initially, Phillips spoke of having only one policy and was concerned when it had been cancelled. *Id.* at 71. Phillips told Iva she would take care of it, which she did by renewing it, and within a few months, relayed to Iva that she had added an additional $5,000 policy. *Id.* Iva stated that Phillips added the $5,000 policy for her and Malinda so the girls could have something extra. *Id.* at 71–72. On cross examination, Iva admitted she did not have any proof that the $5,000 policy ever existed, just Phillips's word. *Id.* at 76. As for the larger policy, Iva asserted that Phillips's intentions had remained the same for more than twenty years, specifically that the four children were to receive the proceeds and split them evenly. *Id.* at 72. Iva testified that this was still Phillips's intention when she listed Iva as the sole primary beneficiary in February 2015. *Id.* at 75.

Ken testified that he talked with Phillips about her policy, which she had obtained because her first husband passed away with nothing to leave to the children, and Phillips did not think that was "right." *Id.* at 76–77. Ken described his visit with Phillips at the hospital in November 2015, specifically that Phillips mentioned having two policies and that this was the first time he had heard of a second policy. *Id.* at 77. Ken explained that according to Phillips, the larger policy was to be split between the four children and the smaller policy, worth $5,000, was

to be put in Sturrock's name and be split between Sturrock and Malinda. *Id.* at 77–78; *see also id.* at 80.

Last, Malinda testified. Malinda said that Phillips purchased the policy after her first husband died so as to have something to leave her children and that she was very proud of this policy. *Id.* at 82. Malinda asserted that no matter who was listed as the primary beneficiary, Phillips intended for this policy to be split among her children. *Id.* at 86. Malinda said it was early 2015 when she first heard of the second policy, worth $5,000 to be split between Malinda and Iva, *id.* at 83, although she admitted that she did not have any proof of this policy, *id.* at 89. Malinda explained that she thought Phillips was confused about the nature of her policy because she had told Malinda something was wrong with the policy sometime after November 7, 2014, when the policy was renewed with a different identification number. *Id.* at 85–86. Malinda offered to help, but Phillips declined and the next time they talked conveyed that the problem had been resolved. *Id.* at 86. Malinda stated that she spoke with Sturrock after Ken had visited the hospital on November 5 and learned from Sturrock that she had written the letters regarding Phillips's desired changes to the beneficiaries of her policies. *Id.* at 84. Malinda also spoke with Phillips the night of the hospital visit, at which time Phillips told Malinda that she had asked Sturrock to write a letter promising to give Malinda half of the $5,000 policy. *Id.* at 87; *see also* Ex. B3.

Malinda further testified that the family remained close with Sturrock even after she and Frank divorced and that there was "no doubt that [Sturrock] was close and a part of our family." Tr. 83. Indeed, Malinda said that Phillips told her in November 2015 that she wanted the smaller policy to be split between Malinda and Sturrock, rather than Malinda and Iva. *Id.* at 87–88. Malinda explained that she spoke with Sturrock often as Phillips's health declined because she

lived in Texas and Sturrock kept her apprised of her mother's condition. *Id.* at 84. Malinda

described that during these conversations, Sturrock relayed that Globe had informed her that

Phillips had two policies. *Id.* at 84–85. Malinda testified that Sturrock had told her that $63

would be coming out of Phillips's bank account to cover the second policy. *Id.* at 85; *see also*

Ex. B4, at 8, ECF No. 59-3. Per Malinda, Sturrock maintained that there were two policies until

around May 2016. Tr. 85. Malinda also explained that her mother would get tired of staying in

one place, would suddenly complain about being treated poorly, and then would move, which

resulted in her moving around a lot. *Id.* at 83. Likewise, Malinda stated that Phillips began

expressing discontent while living at Sturrock's house in December 2015 and was making

tentative plans to move in with Malinda in Texas. *Id.* at 91. According to Malinda, Phillips took

a similar approach with the policy and would change the listed beneficiary because she was mad

about something, but that it was still her intent to have the money go to her children. *Id.* at 86–

87.

## II. Standard of Review

In any action tried without a jury, the Court must make specific findings of fact and state

its conclusions of law separately. Fed. R. Civ. P. 52(a)(1). In doing so, "[t]he trial judge has the

function of finding the facts, weighing the evidence, and choosing from among conflicting

inferences and conclusions those which he considers most reasonable." *Select Auto Imps. Inc. v.*

*Yates Select Auto Sales, LLC*, 195 F. Supp. 3d 818, 823 (E.D. Va. 2016). This task also involves

evaluating the credibility of witnesses, and the trial judge may "disregard testimony of any

witness when satisfied that the witness is not telling the truth, or the testimony is inherently

improbable due to inaccuracy, uncertainty, interest, or bias." *Id.* (citing *Columbus-America*

*Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995); *Burgess v. Farrell Lines,*

*Inc.*, 335 F.2d 885, 889 (4th Cir. 1964)). When articulating its findings of fact, "[a] trial court must do more than announce statements of ultimate fact." *United Am. Ins. Co. v. Fauber*, No. 5:16cv19, 2017 WL 3911019, at *3 (W.D. Va. Sept. 6, 2017) (citing *United States ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986)). The Court is not, however, required "to make findings on all facts presented or to make detailed evidentiary findings . . . . The ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence." *Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962).

## III. Findings of Fact

Based on the above background discussion of both the policy documents and the competing facts and evidence presented at trial, the Court makes the following findings of fact:

1. At all times, Phillips had only one life insurance policy with Globe, issued originally by Globe on November 7, 1994, with the identification number 00-B641002.

2. Phillips purchased this policy after her first husband died because she wanted to have something to leave to her children when she died.

3. Phillips was proud of her policy and of having something to leave to her children.

4. Phillips changed the beneficiary of her policy a number of times, increasing the frequency of those changes in the last years of her life.

5. Phillips frequently moved, living at various times with her children or with Sturrock.

6. Phillips had a habit of tinkering with the beneficiary designation for her policy and moving from place to place.

7. Phillips intended that the policy proceeds be split equally among her four children, no matter who was listed as the beneficiary or beneficiaries, or with whom she was living at any given time.

8. Phillips renewed her policy, now worth $20,000, on November 8, 2014, at which time Globe assigned the policy a new identification number, 00-6R94321.

9. Phillips listed Sturrock as the primary beneficiary of her policy at that time.

10. Phillips moved in with Iva and her husband Brian sometime in 2014.

11. In February 2015, Phillips changed the beneficiary of her policy from Sturrock to Iva.

12. Phillips made this change because Iva was supposed to take care of her when she moved in with Iva and Brian.

13. At some point in early 2015, Phillips told Iva and Malinda that she had obtained a second policy worth $5,000, and she wanted her daughters to split the proceeds so they could have something extra.

14. While living with Iva and Brian, Phillips got frustrated, stemming from disagreements over her continued smoking habits and neglecting to use her oxygen.

15. Phillips moved out of Iva and Brian's house sometime in late October 2015 or early November 2015, and moved in with Sturrock.

16. Iva and Brian had Phillips's belongings taken out of their house, and Sturrock's brother Robert picked up these belongings.

17. Phillips was hospitalized in early November 2015.

18. Ken visited Phillips in the hospital, at which time Phillips told him about a second policy. This was the first time Ken had heard of an additional policy.

19. During this hospital visit at which Phillips, Ken, and Sturrock were present, Phillips detailed that she wanted to put the $20,000 policy in Ken's name and the $5,000 policy in Sturrock's name. Phillips intended for Ken to divide the larger policy equally among her children and for Sturrock to split the smaller policy with Malinda.

20. Phillips wanted part of the smaller policy to go to Sturrock because she had always helped out and Phillips wanted to leave her something as well.

21. Ken convinced Phillips to list all the Biggs Defendants, rather than just himself, as beneficiaries of the larger policy.

22. Sturrock prepared two change-of-beneficiary letters dated November 5, 2015, one naming the Biggs Defendants as beneficiaries on policy number 00-B641002, and one naming Sturrock as sole beneficiary on policy number 00-6R94321. She mailed them together to Globe.

23. These letters expressly referenced Phillips's "policies" with Globe.

24. Phillips made these two conflicting beneficiary designations out of confusion over the number and nature of her policies and not as a ruse to fool and effectively disinherit her children.

25. Globe, without explanation, processed these letters on successive days, changing the beneficiaries on Phillips's sole policy (00-6R94321) to the Biggs Defendants on November 17, 2015, and then changing the beneficiary on the same policy to Sturrock on November 18, 2015.

26. Sturrock prepared a promissory letter for Phillips to sign, dated December 3, 2015, in which Sturrock promised to give Malinda $2,500 from the money left by Phillips for Sturrock. Malinda knew Phillips had asked Sturrock to compose this letter.

27. Phillips was hospitalized again in January 2016.

27. Phillips told Jessica, her granddaughter and the daughter of Frank and Sturrock, that she did not think Iva deserved any of the money, but she nonetheless wanted to keep her word of leaving the larger policy for her children.

28. Phillips died on January 8, 2016.

29. In correspondence with Malinda following Phillips's death, Sturrock referenced money that was to come out of Phillips's bank account to pay for the premium on a "2nd insurance policy."

## IV. Conclusions of Law

*A.      Background and Applicable Law*

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1335, and the case is before the undersigned by the parties' consent under 28 U.S.C. § 636(c). Summ. J. Mem. Op. 1 n.1. The Court applies federal law to determine questions of procedural law and the law of the forum state to determine questions of substantive law, *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 511–12 (E.D. Va. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), which in this case means Virginia law controls for issues of substantive law. Moreover, "[i]n this interpleader action, each party bears the burden of establishing his or her own entitlement to the life insurance proceeds by a preponderance of the evidence." *Fauber*, 2017 WL 3911019, at *3 (citing *Nationwide Mut. Ins. Co. v. Estate of Tina Fluharty*, No. 5:07-cv-140, 2009 WL 347288, at *3 (N.D. W. Va. Feb. 11, 2009) (collecting authorities)). In other words, a party must prove that it is more likely than not that he or she is entitled to some or all of the proceeds.

"In Virginia, 'courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they used in the document.'" *Lark v. W.*

*Heritage Ins. Co.*, 64 F. Supp. 3d 802, 807 (W.D. Va. 2014) (quoting *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001)). "[A] court must [also] adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy." *Blue Cross & Blue Shield of Va. v. Keller*, 450 S.E.2d 136, 140 (Va. 1994). Here, the Court applies this guidance in interpreting Phillips's insurance policy as it relates to her changing the designated beneficiary. Phillips's policy with Globe expressly gave her the right to change the beneficiary on her policy as often as she liked, and the only requirement to make a valid change was for Phillips to "file a satisfactory written request with" Globe. Globe Ex. 2, at 4. Phillips's policy also indicated that any change would take effect once Globe recorded it. *Id.* The parties do not allege that Phillips ever made an invalid change of beneficiary.

The central issues to be determined by the Court after trial thus concern Phillips's understanding of her policy and her intent in changing the beneficiary(ies) as expressed in the letters from November 5, 2015. Resolution of these issues is complicated by the ambiguities of the November 5 letters, conflicting testimony from the would-be beneficiaries about Phillips's stated intent, Phillips's frequent changes to the designated beneficiary, and Phillips's at times tumultuous family relationships. Yet, this exercise is necessary because courts must endeavor to give effect to the intent of the insured when she attempts to make a valid change of beneficiary. *See, e.g.*, *Stafford v. United States*, 128 F. Supp. 435, 437 (W.D. La. 1955) ("Even in the absence of a formal change of beneficiaries, courts have consistently sought to ascertain and enforce the true intention of the insured." (collecting cases)); *Provident Life & Accident Ins. Co. v. Dotson*, 93 F. Supp. 538, 541 (S.D. W. Va. 1950) ("When it appears that the insured actually attempted to make a valid change of beneficiary the courts will give effect to his intention."). In doing so, in

cases where the insurer (here, Globe) is not an active litigant and the dispute instead exists between two or more potential beneficiaries, courts employ principles of equity. *See* 4 *Couch on Insurance* § 60:27 (3d ed. 2017) ("Equitable principles generally govern disputes over the effectiveness of a change of beneficiary in which the insurer is not a party litigant . . . ."); *Change of Beneficiary in Old Line Insurance Policy as Affected by Failure to Comply with Requirements as to Manner of Making Change*, 19 A.L.R. 2d 5, § 4 (1951) ("In most cases in which the conflict is not between the insurer and the claimant but between the original beneficiary and the substitute beneficiary, the application of equitable principles is of paramount importance.").

Illustrative of this approach is the doctrine of substantial compliance, which "is an equitable principle that gives effect to the demonstrated intent of an insured in designating a beneficiary." *Metro. Life Ins. Co. v. Gorman-Hubka*, 159 F. Supp. 3d 668, 673 (E.D. Va. 2016). Under Virginia law, to realize the benefit of the substantial compliance doctrine, it must appear from the "evidence that (i)'the insured had determined to change the beneficiary' and (ii) 'that [she] had done everything to the best of [her] ability to effect the change' by taking all the steps '[she] could to comply with the provisions of the policy.'" *Id.* at 674 (quoting *United Servs. Life Ins. Co. v. Moss*, 303 F. Supp. 72, 75–76 (W.D. Va. 1969)). The court in *Moss* articulated the purpose behind this doctrine, stating that "[e]quity regards that as done which should have been done and if the insured has done all [she] could to comply with the provision of the policy, equity will give effect to the intent of the insured." 303 F. Supp. at 76. Generally, resort to the substantial compliance doctrine is appropriate either when the insured attempts to make a change of beneficiary, but for one reason or another, the insurer did not receive evidence of this attempt,

or when the notice of the change is received, but is not effectuated before the insured dies. *See Gorman-Hubka*, 159 F. Supp. 3d at 674.

To be sure, the facts do not lend themselves to direct application of the doctrine of substantial compliance in this case because both Sturrock and the Biggs Defendants agree that the change-of-beneficiary letters dated November 5 were received by Globe Life and put into effect. The parties also agree that Globe changed the beneficiary(ies) on Phillips's policy in response to the letters. The disagreement concerns Phillips's understanding of the nature and scope of her coverage—specifically whether she genuinely thought she had two separate policies worth a total of $25,000, or whether she knew she in fact only had one $20,000 policy—and what she intended when she instructed Sturrock to send those two letters together to Globe. That said, understanding this doctrine is helpful because it illustrates one of the more prominent tools courts use to reach an equitable outcome in cases pitting potential beneficiaries against each other. Put another way, courts use equitable principles to reach an outcome reflective of the insured's wishes, and the general purpose behind employing these equitable principles guides the Court's determination in this case.

B.     *Phillips's Understanding of Her Globe Policy*

Based on the above facts and considering the principles of equity, the Court concludes that the Biggs Defendants have shown by a preponderance of the evidence that Phillips believed, albeit mistakenly, that she had two policies with Globe when she signed the change-of-beneficiary letters on November 5, 2015. The implication of this conclusion, of course, is that Sturrock has not proven by a preponderance of the evidence her theory regarding Phillips's understanding of the policy.

Many factors contribute to this conclusion. First, the change-of-beneficiary letters explicitly refer to more than one policy: "I also give permission for you to speak to Sherry Sturrock about my *policies* on my behalf. Please mail current *policies* to the above address." Exs. S2, S3; Ex. B2 (emphasis added). The letters also reference different policy identification numbers. *See id.* Although Sturrock contends that Phillips intentionally used the different policy identification numbers to deceive the Biggs Defendants, she does not explain why the letters twice mention Phillips's current "policies."

Next, Sturrock herself alluded to a "2nd insurance policy" in electronic messages with Malinda shortly after Phillips died in January 2016. Ex. B4, at 8. Although the message does not explicitly identify the policy as a life insurance policy, Malinda testified that this message concerned a second life insurance policy, Tr. 85, and Sturrock did not test that assertion during her cross examination of Malinda or attempt to refute the statements attributed to her when given an opportunity to put on rebuttal evidence. Additionally, none of the evidence presented to the Court disclosed that Phillips in fact had another insurance policy. Thus, Sturrock's message supports the inference that at the time Phillips instructed Sturrock to send the change-of-beneficiary letters, the Biggs Defendants, Sturrock, and Phillips all mistakenly believed that Phillips had two life insurance policies.

Furthermore, the testimony presented at trial supports the Biggs Defendants' version of the events. Barbara Workman, Kari Forrest, and Sturrock all testified that Phillips told them she knew she had only one policy. Conversely, Malinda, Iva, Ken, and Brian all testified that Phillips had told them about a second policy at some point in 2015. Resolution of this inconsistent testimony rests in large part upon which sources are more credible and which testimony leads to the most logical explanation of what happened in this case. Based on my observations at trial and

my consideration of the other evidence, I find the testimony favoring the Biggs Defendants' version of events to be more persuasive.

Sturrock's version of these events also rests on flawed logic. Sturrock claims that Phillips knew she had only one policy and that she wanted Sturrock, and not her children, to receive the proceeds when she died. Sturrock contends that Phillips wanted to keep her plan hidden from her immediate family, hence the change-of-beneficiary letter listing the Biggs Defendants as beneficiaries for the old, and invalid, policy number and the December 3, 2015 "To Whom It May Concern" letter, which Sturrock described as being intentionally drafted in vague language in case it fell into the wrong hands. Put another way, Sturrock asserts that Phillips outwardly acted as if she planned to name her children as equal beneficiaries on her only policy, but behind the scenes she sought to ensure that Sturrock would be the sole beneficiary, thus preventing the Biggs Defendants from collecting on the policy. These purported acts of deception, however, are where Sturrock's story falls apart.

First, the elaborate ruse that Sturrock presents was entirely unnecessary. If Phillips's intent had been to leave the life insurance policy proceeds to Sturrock alone, she simply needed to submit the change of beneficiary letter to Globe without even telling her children. Doing so surreptitiously would have cut off the children's right to recover after Phillips's death without muddying the waters as to her beneficiary designation.

Instead, Phillips discussed her intent to name her children as the equal beneficiaries of one policy and Sturrock as the sole beneficiary of another policy while one adult child was within earshot—which Ken testified happened during his November 2015 visit to the hospital. Tr. 77–78. Although Sturrock did not expressly confirm the details of this conversation, she also did not dispute Ken's version of the visit; rather, she claimed that Phillips had not been entirely

forthcoming about her intentions while Ken was privy to the conversation. *Id.* at 33 ("[A]fter he left, you know, she told him one thing and she told me another."). Sturrock also testified that "[t]he two letters were written – they were typed by me, but they were written by [Phillips]. She was living at my house at that time. She was actually in the hospital when she – we discussed this at the hospital. Ken Biggs was present when we were discussing this." *Id.* Furthermore, Malinda testified that she spoke with Sturrock about the change-of-beneficiary letters that Sturrock prepared, and that it was her understanding that Sturrock had mailed the letters together. *Id.* at 84.

Sturrock's explanation that the conversation at the hospital was part of Phillips's ruse to fool her children leaves one significant question unanswered: what did Phillips tell her children about the second policy, which clearly Ken and Malinda knew about, that named Sturrock as beneficiary? Sturrock has provided no answer, but certainly one would have been necessary to maintain the supposed ruse. The more credible explanation, which the Biggs Defendants advance, is that Phillips executed two change-of-beneficiary letters because she mistakenly believed she had two policies. Supporting the Biggs Defendants' version, Malinda testified that Phillips said she had asked Sturrock to prepare a letter reflecting her intention to have the proceeds from the second policy, which was for $5,000, split between Malinda and Sturrock, a letter which was eventually drafted in December 2015. *Id.* at 87–88. Sturrock did not question Malinda about this testimony during the trial, nor did she attempt to refute it when given the chance to present rebuttal evidence.

There are other reasons why the Biggs Defendants' version of events better aligns with the evidence. Both Malinda and Iva testified that Phillips expressed confusion after the initial policy lapsed in November 2014. Tr. 71, 85–86. This is not altogether surprising given Globe's

method of renewing policies. Specifically, upon the expiry date of Phillips's original policy, that policy ended and Globe reissued a "new" policy with the same terms, but with a different identification number. *See* Summ. J. Mem. Op. 2–3. Phillips, however, later told both Iva and Malinda that the problems with continuing the policy had been resolved and that she added a second policy for them. Tr. 71, 86, 88. Additionally, Sturrock's argument that Phillips mentioned this nonexistent second policy as part of her plot to deceive the Biggs Defendants is undermined by the timing of Phillips's written and oral statements. The discussions about a second policy first occurred in early 2015, prior to Iva moving Phillips out of her house. Tr. 71, 88. That event caused the most friction between Phillips and Iva. Because that event and the resulting friction came after Phillips said she had a second policy, it could not have served as the motivation for Phillips to trick her children into thinking she had a second insurance policy. Furthermore, around the time of these conversations, Phillips named Iva as beneficiary on the $20,000 policy. Thus, any argument that Phillips mentioned a fictitious second policy as part of a ruse to fool and disinherit her children is inconsistent with Phillips, around the same time, naming Iva as beneficiary on her sole policy.

It follows, then, that Sturrock's theory, which relies on Phillips having employed secretive and deceptive practices to deprive her children of the policy proceeds, does not hold up in the face of the evidence. Rather, the more likely explanation is that offered by the Biggs Defendants, particularly that Phillips misunderstood the nature and scope of her life insurance coverage and genuinely, albeit mistakenly, believed she had two policies to her name. To be sure, the Court has questions about the Biggs Defendants' theory of the case—most notably the absence of an actual $5,000 policy. But on the whole, their version has more factual corroboration and makes more sense than Sturrock's. In other words, Sturrock advanced

inconsistent explanations that are difficult to reconcile with the evidence and ultimately fall short of the standard of proof, whereas the Biggs Defendants' provide a more coherent and credible explanation for Phillips's understanding of her policy.

C.    *Phillips's Intent in Changing the Beneficiary(ies)*

Next, the Court must determine Phillips's intent when she signed the two change-of-beneficiary letters in November 2015. I find that the Biggs Defendants have shown by a preponderance of the evidence that Phillips intended for all four of them to share the proceeds from the $20,000 policy equally. Nevertheless, Sturrock has also shown by a preponderance of the evidence that Phillips intended to leave her something as well. Unfortunately for Sturrock, the source of the proceeds from which Phillips intended Sturrock to benefit simply does not exist. That said, it is the Court's role to resolve this conundrum and give effect to Phillips's overall intent. Therefore, guided by equitable principles, the Court concludes that Sturrock should receive a share of the proceeds, in the amount of $2,500, from the policy that Phillips did in fact have with Globe.

As explained above, I find that a preponderance of the evidence showed Phillips believed she had a second policy with Globe. That conclusion strengthens the Biggs Defendants' theory that Phillips intended for her children to share equally the proceeds of the $20,000 policy. The Biggs Defendants testified convincingly that Phillips initially obtained the insurance policy so she could leave something to her children. This was a long-held desire, dating back to the death of her first husband (the Biggs Defendants' father). The Biggs Defendants, as well as other witnesses, also testified that regardless of who was listed as the beneficiary, Phillips intended for that person to evenly divide the proceeds among the Biggs Defendants. Sturrock herself admitted that Phillips wanted this exact outcome when she listed Frank's wife Lisa as the beneficiary in

September 2013. Tr. 30–31. Indeed, Phillips maintained this policy, making timely payments, for over twenty years. Accordingly, I find that it is more likely than not that Phillips designated the Biggs Defendants as beneficiaries on her original policy with the intent that she would leave the proceeds to her children, as she professed all along.

Sturrock's position rests on the contention that Phillips was fed up with all her children in the last few months of her life and wanted them to receive nothing. The testimony and evidence does not bear this out. Although some of Sturrock's witnesses testified to this effect, when pressed, each witness admitted that she had heard Phillips make negative comments primarily about Iva, but not about the other Biggs Defendants. For example, Barbara Workman testified she never heard Phillips say anything bad about Malinda. Sandra Stone testified she heard Phillips make negative comments about Iva, but not about her other children. Kari Forrest testified that Phillips was primarily upset with Iva and, on one or two occasions, Frank and his wife, but never Ken or Malinda.

Similarly, the Biggs Defendants' witnesses testified that Phillips always intended for the money to be split between her children. Brian testified that he heard Phillips express a desire that both policies—the $20,000 policy and the nonexistent $5,000 policy—were to be split evenly among the Biggs Defendants. Lisa Cashin Biggs testified that when she was listed as the beneficiary in 2013 until November 2014 when the policy renewed, Phillips still intended that Frank would have the responsibility of splitting the proceeds evenly among his siblings. Jessica testified that during the visit with Phillips just days before she died, Phillips expressed significant anger with Iva, but still wanted to keep her word and have her children, including Iva, share in the policy equally. Frank reiterated that Phillips always wanted the money to go to her children. Iva testified to the same effect, specifically noting that Phillips intended for her to divide the

money among the children when she was listed as the beneficiary in February 2015. She also added that Phillips told her that the smaller policy was for her to share with Malinda. Ken testified that the larger $20,000 policy was to be divided evenly among the children and the smaller $5,000 policy was to be split between Sturrock and Malinda. Malinda testified to the same extent as Ken, namely that the larger policy was always supposed to go to the children and the small policy was to be split between her and Sturrock as Phillips believed Sturrock deserved something.

Ultimately, Sturrock's overarching theory falls short because she has not shown by a preponderance of the evidence that Phillips intended to prevent all her children from receiving any of the policy proceeds. Instead, the more likely explanation is the one espoused by the Biggs Defendants, specifically that Phillips had a habit of tinkering with her policy's designated beneficiary despite always maintaining the intent that the proceeds be divided evenly among her children. As such, the Court concludes that when signing the letters on November 5, 2015, Phillips intended to leave the $20,000 policy to her four children to share evenly. That said, Sturrock has shown by a preponderance of the evidence that Phillips did intend for her to receive some amount of money, albeit from a nonexistent policy. Indeed, the Biggs Defendants do not dispute this, as they admit that Sturrock was generally considered by Phillips to be part of the family and was, up until the present litigation, on relatively good terms with Phillips's children. Therefore, given all the evidence and testimony presented at trial, the Court concludes that Phillips intended for each of the five defendants to receive some amount of the proceeds from her life insurance policy, and the Court will enter judgment to effectuate that intent.

V. Conclusion

For the foregoing reasons, the Court concludes that Sturrock is entitled to $2,500 and the Biggs Defendants are entitled to the remaining proceeds of approximately $17,971.78 with interest to share equally. A separate Order will enter.

The Clerk shall send a copy of this Memorandum Opinion to all remaining parties.

ENTER: March 30, 2018

Joel C. Hoppe
United States Magistrate Judge